THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

DANIEL M. RAIDY.

*Opinion filed June 16, 1903.*

1. TRIAL—*effect where plaintiff is contradicted by his own witnesses.* That the plaintiff in a personal injury case is contradicted by his own witnesses upon some points of his testimony does not authorize the court to instruct the jury to find for the defendant, since the credence to be given to the plaintiff's testimony is a question for the jury.

2. FELLOW-SERVANTS—*when the "fellow-servant" rule does not apply.* The rule as to fellow-servants does not apply in an action for personal injuries not brought against the common master.

3. NEW TRIAL—*rule where a new trial is asked for newly discovered evidence.* To justify granting a new trial for newly discovered evidence it must appear from the affidavit that the evidence is material, and not merely cumulative, and that due diligence was used to procure it before the trial.

4. APPEALS AND ERRORS—*whether damages are excessive is not a question for the Supreme Court.* Whether the damages awarded in a personal injury case are excessive is a question which is conclusively settled by the judgment of the Appellate Court.

*Chicago and Alton Railroad Co.* v. *Raidy,* 100 Ill. App. 506, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding.

This is a suit brought by Daniel M. Raidy, who was in the employ of the Wabash Railroad Company as a switchman, against the Chicago and Alton Railroad Company. The evidence shows that on the night of February 8, 1899, appellee was one of a switching crew consisting of an engineer, fireman and three switchmen, one of the switchmen by the name of Barnes acting as foreman of the crew, and that they were taking a train of cars from the middle to the lower Wabash freight yards in East St. Louis, and in doing so were compelled to cross the Big Four, Clover Leaf and Chicago and Alton railroad

tracks, all these tracks being on the same level as those of the Wabash. When the Wabash train reached the other tracks it was running at the rate of from five to eight miles an hour. Barnes, who was acting as foreman or conductor, was on the top of the car farthest from the engine, appellee was on the car next to him and the other switchman was on the car next to the engine, which was pushing the train. The positions of these men, according to the evidence, were the regular and proper ones. As the Wabash train approached the crossings of the other roads a signal was received from the semaphore, which was a white light, indicating that it had the right of way to the crossings. It crossed over the Clover Leaf and Big Four tracks, but when the second car of the train was on the Chicago and Alton track, this car being the one which appellee was riding, it was struck by an engine of the Chicago and Alton, turned over, and appellee was so thrown as to break four or five ribs, two fingers and sustain several scalp wounds. The case was tried by a jury, which returned a verdict for appellee of $6000, but the court required a *remittitur* of $2500, and judgment was given for $3500. An appeal was taken to the Appellate Court, where that judgment was affirmed.

CHARLES P. WISE, for appellant.

B. H. CANBY, and M. D. BAKER, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

In this case the appellee offered but one instruction, which related to the measure of damages, and is not complained of. No exceptions are taken to the rulings of the court in the admission of evidence, and only two matters are urged for our consideration: First, that the court refused to give a peremptory instruction directing a verdict for appellant, offered at the close of appellee's

evidence and at the close of all the evidence; and secondly, that the court erred in not granting a new trial.

The main portion of appellant's brief and argument is devoted to the proposition that the peremptory instruction should have been given, because the evidence disclosed that those in charge of the train upon which appellee was brakeman, at the time he received the injury, violated the statute by failing to bring the train to a full stop within eight hundred feet of the crossing of appellant's road. It is urged that the evidence shows that the train did not stop, and from that premise it is insisted that appellee was a fellow-servant of those in charge of the Wabash train, and his right would be governed by their conduct and affected by their negligence, and that they having violated the law in running to this crossing without coming to a full stop within eight hundred feet, that is conclusive of his right. The trouble with this argument is that it is based upon a false premise. It assumes that appellee was in control of the Wabash train or that the rule of fellow-servant applies. There were five persons, including appellee, on the Wabash train with which appellant's train collided: the engineer, fireman, foreman (who stood as conductor) and two brakemen, appellee being one of the brakemen. The Clover Leaf track was the one first crossed by the train upon which appellee was. The Big Four was the next track and appellant's the last. The testimony all shows that these tracks are two hundred feet apart, making four hundred feet from the tracks of the Clover Leaf to the tracks of appellant. Appellee testified that when within two hundred feet of the Clover Leaf crossing, which would be within six hundred feet of appellant's crossing, the Wabash train came to a full stop and he got off and turned the switch. All the other persons on that train contradicted appellee, in a greater or less degree, in relation to the train stopping, all of them testifying that it did not come to a full stop, and some of

them testifying that it slowed down to from five to six miles an hour, but none of them corroborated appellee in the statement that he got off and turned the switch. Appellant offered no evidence upon the question,—in fact offered no evidence at all, except a plat of the tracks and crossings. Because the appellee and his witnesses disagreed upon the question of the train stopping, and though appellee may have been contradicted in that regard by the statements of his other witnesses upon that point, still, it did not become a question of law whether appellee was telling the truth about the matter or the other witnesses who testified in his behalf. The court, in considering the peremptory instruction, could not weigh the evidence. It was a question for the jury. If, from the conduct of the witnesses or the course of examination or corroborating circumstances, the jury should see fit to believe the statement of appellee, they had the right to do so, and it was not a matter for the court to pass upon by instructions.

We think, however, that this question of failure to stop at the crossing can have very little weight in the consideration of this case. The train was being backed, or pushed, by the engine. Barnes was the conductor or foreman of the crew and in charge of the train, and was on what might be termed the head-end of the train, as he was on the south end of the car farthest from the engine and the train was going south. Appellee was placed on the car next to him and between him and the engine, and the other brakeman on a car next to the engine, and appellee was in no manner in control of the train. Barnes gave such directions and signals as he deemed necessary, and they were communicated by appellee and the other brakeman to the engineer. Unless appellee was in authority and had control of the train, and had the right to order the train to be stopped, he could not be chargeable with negligence, if there was any, in its failure to stop before crossing the Clover Leaf track or with-

in eight hundred feet of appellant's track, because other persons, members of the same crew but in authority, failed to have it stopped, as the rule of fellow-servant does not apply. This suit is not against a common master of those in charge of the Wabash train, but was, so far as the evidence discloses, against a stranger to all of them, and the law is well settled that in such case the rule of fellow-servant does not apply. (*Chicago and Alton Railroad Co.* v. *Harrington,* 192 Ill. 9; *Chicago and Eastern Illinois Railroad Co.* v. *O'Connor,* 119 id. 586; *Spry Lumber Co.* v. *Duggan,* 182 id. 218.) If it could be said that appellee was in the discharge of duties which might in some degree affect the control of the train by the communication of signals or warnings of danger, and that by his failure to give warning of the approach of appellant's train he contributed to his injury, the evidence shows, beyond question, that all the tracks that were to be crossed had signal lights displayed, and that in each instance the white light indicated the track was clear and that the train upon which appellee was had the right of way, and that the red light indicated danger and was a warning to trains to stop, and that all those lights, on the occasion of the collision, as displayed on the Wabash track, were white, and were a direction to those in charge of the Wabash train to go ahead. The evidence also shows, beyond question, that appellee saw those lights and that proper communication of their signal was made to the engineer. Such being the state of the evidence, a court could not say, as a matter of law, that appellee was guilty of negligence that contributed to his own injury, but it would be a question of fact, to be determined by a jury, whether, with the number of roads to cross, the number of lights to observe and the duties that appellee was called upon to discharge, all taken together and under the surrounding circumstances, he was guilty of negligence and whether that negligence contributed to his injury.

Appellant made a motion for a new trial based upon the ground of newly discovered evidence, and the motion was overruled. The newly discovered evidence purported to go to the extent of appellee's injuries and the amount of his earnings, as questions affecting the amount of damages. When appellee was injured he was taken to St. Mary's Hospital, at East St. Louis, where he remained about thirteen days, and was thence taken to the Wabash railroad's hospital at Moberly, Missouri. The affidavit of Tracy states that affiant, before the time of the trial, endeavored to trace the whereabouts of appellee, and learned that he was at St. Mary's Hospital but was unable to trace him beyond that; that after the trial, and after appellee had disclosed his whereabouts from the time of the injury until his recovery, affiant had made an investigation, and it had disclosed that appellee was discharged from the hospital at Moberly as perfectly cured and capable of resuming his former occupation, and it had also disclosed that he placed the amount of his earnings, in his testimony at the trial, as much greater than they actually were. Affiant Tracy says that he was the agent of appellant, but does not state what sort of agent, or in what capacity he was acting, other than that he was acting in the preparation of the trial of this suit. The other affiant, Hitchcock, states that he was the paymaster of the Wabash company, and shows the amount of appellee's pay from that company to have been less than appellee testified his monthly earnings were. Affiant Dr. C. B. Clapp, surgeon in charge of the Wabash Hospital at Moberly, states that appellee had a single fracture of the fifth, sixth and seventh ribs of the left side, and lacerations of the scalp, and after remaining twenty-nine days was discharged as cured and able to return to his previous position. Tracy was the only affiant who tried to trace appellee, and his affidavit does not show from whom he obtained his information or of whom he made inquiry as to the whereabouts of appellee.

It does not show that he inquired at the St. Mary's Hospital, in East St. Louis, where he says he knew he was or had been, or that he inquired of the officials of the Wabash Railroad Company who would have charge of and be likely to have knowledge of injured employees of that company. Affiant states that he made inquiry of a number of persons from whom he hoped to receive information as to the whereabouts of appellee, and was unable, although he made diligent efforts to do so, to ascertain his whereabouts. This is the mere conclusion of the affiant, and gave the court no information upon which it could determine whether he was diligent or not. Nor does the affidavit state that he had any reason to believe or suspect that appellee was not injured as much as he would claim upon the trial, and that he was seeking his whereabouts and endeavoring to collect evidence to show the real extent of his injury; nor does it state that it was anticipated that appellee would place his average earnings at a greater amount than they actually were, and that the affiant was endeavoring to find his whereabouts or get information that would lead to a true discovery upon that question. In fact, there is nothing tangible stated in the affidavit by which a court could say that any diligence at all was used in the search of appellee. The suit was begun the 18th day of October, 1900. A declaration was filed at the time, and plea to the declaration was filed December 4, 1900. The case was tried January 21, 1901. The declaration disclosed the employment of appellee, at the time of the injury, as a switchman of the Wabash Railroad Company, and gave sufficient details that one who was really seeking to find appellee would most naturally have gone to that company to learn as to his whereabouts. From the manner in which the affidavit is drawn and from the indefinite statements it contains, the presumption is natural and very strong that the evidence insisted upon as a ground for a new trial was never thought of or sought for until

after the trial. In fact, it is not stated in the affidavit at all that such evidence was thought of or sought for, but that affiant simply tried to find out where appellee was. It may be that appellee was not injured as much as he claims or that his earning capacity was not as great; but the fact that appellee was where appellant's agents could not find him, if such was the fact, could not have in any manner prevented him from going to the Wabash Railroad Company, for whom it appears appellee had worked for several months, and ascertaining what pay he was getting, and if he had gone and made inquiry of that company there is nothing tending to show that he would not have learned of it the information sought, including appellee's whereabouts. It cannot be the practice of courts to allow important matters to go to trial, and because one party is not satisfied with the results of it, let him go out and try to get facts which will enable him to do better at another trial, and rely upon such after-ascertained matters as a basis for a new trial. In such case the courts require that the newly discovered evidence shall be material and shall not be cumulative, and that due diligence has been exercised to procure it.

It is also insisted that the damages awarded appellee are excessive. That is a matter which we are not permitted to consider in a case that has passed through the Appellate Court, as the one at bar has done, as its judgment upon the extent of damages is conclusive. *Stephenson* v. *McClintock*, 141 Ill. 604; *Illinois Central Railroad Co.* v. *Frelka*, 110 id. 498.

Finding no reversible error in this record the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*