(No. 32936.—

WILLIAM EARL STOCKER, Appellant, *vs.* ROBERT J. SCHERER *et al.,* Appellees.

*Opinion filed November 18, 1953.*

M. J. Brown, of Hillsboro, for appellant.

Bullington & Bullington, and Paul M. Hickman, guardian *ad litem,* both of Hillsboro, for appellees.

Mr. Justice Klingbiel delivered the opinion of the court:

On April 4, 1951, William Earl Stocker brought suit in the circuit court of Montgomery County seeking specific performance of an alleged oral contract, entered into on or about April 4, 1904, whereby one Mary C. Wright, since deceased, promised to convey or devise to him certain real estate. The executors, heirs and devisees of Mary C. Wright, deceased, are made defendants. The cause was heard before the court, and a decree entered dismissing the complaint for want of equity. Plaintiff appeals to this court, a freehold being involved.

The complaint alleges that in 1904 Mary C. Wright promised the plaintiff (who at that time was about nineteen years of age) that if he would assist in erecting a dwelling house on her two lots, reside with her therein, and work as a teamster and general helper for her husband, and if he would assist her in doing household work and making needed repairs, and if he would refrain from moving to the territory of Oklahoma as he intended to do at the time, then she would devise or convey to him the said two lots; that the plaintiff accepted the proposition, refrained from moving to the territory of Oklahoma, assisted in erecting the dwelling house, and performed the other services required by the agreement; and that Mary C. Wright died on November 24, 1950, without having performed her agreement, the property being devised instead to defendants.

The evidence shows that the decedent and her husband had no children, and that in 1904 plaintiff went to live

with them in their home at Litchfield. He helped build the house, and later drove a team of horses for decedent. He also performed housework, and in general occupied a position similar to that of a son or other member of the family. In 1913 plaintiff married, moved to Wood River, and entered the plumbing and heating business, with consent and approval of the decedent. He returned frequently to the home of decedent, performing plumbing and electrical work for her and doing other small repair jobs on her property. In her later years he attended to her business affairs, and during her illness made regular trips to visit her and take care of her needs. The evidence further shows, by the testimony of numerous witnesses concerning conversations with decedent, that she repeatedly expressed an intention that plaintiff was to have the property at her death, and that she often observed that plaintiff had taken good care of the place and had treated her very well.

There is no evidence, however, of the making of an agreement as alleged in the complaint, and nothing in the record tends to show that the intention to leave the property to plaintiff arose out of or was attributable to any such contract. As this court has repeatedly observed, the contracts which a court of equity will specifically enforce must be fully and completely proved and their terms must be shown with certainty. (*Ellis* v. *Williams,* 414 Ill. 99; *Rigolio* v. *Knopf,* 390 Ill. 258; *Anderson* v. *Augustana College,* 300 Ill. 72.) Instead of being complete and certain as to terms, the proof in this case does not even warrant the inference that a contract of any kind was made. Mere expressions of intention to devise property cannot satisfy the requirements. The decree for defendants was clearly correct on this record.

Plaintiff further contends the court erred in denying his motion for a new trial on the ground of newly discovered evidence. It appears by affidavit that at the time suit was filed plaintiff was of the opinion that one Myrtle

Renner, a close friend and neighbor of decedent, knew of the oral·agreement and would be willing to testify concerning it; that on August 27, 1952, plaintiff and his attorney went to her home for the purpose of verifying this belief, but were told by her that she knew nothing about any agreement between decedent and the plaintiff; that this witness was very ill on the day of the visit and entered a hospital on the following day, where she remained for two weeks; that after the decree had been entered plaintiff and his attorney made another visit to the home of Myrtle Renner and discovered that in fact she knew of the oral agreement through conversations with decedent, wherein the latter related she and her husband had told plaintiff that if he would not go to Oklahoma and would stay with them and help them in building a home and managing their financial affairs, they would leave the home to him when they passed away. An affidavit of the proposed witness further related that decedent had told her the plaintiff agreed to the terms and thereafter performed his part of the contract to their complete satisfaction. Plaintiff's sworn motion alleges that during this visit plaintiff and his attorney were also informed by Mrytle Renner that her son and one Gues Vapos might know something about the oral agreement, and upon subsequent interviews they ascertained that this son and Gues Vapos had heard similar statements by decedent and by her husband. The motion for new trial upon the basis of such new evidence was made within thirty days after the date of the decree.

Defendants contend that plaintiff and his counsel failed to exercise due diligence in discovering the evidence, and that the motion was therefore properly denied. We think the contention must be sustained. The rule is well settled that in order to obtain a new trial on the ground of newly-discovered evidence it must appear that due diligence has been used to discover and procure the evidence on the trial. (See *Conlan* v. *Mead,* 172 Ill. 13.) In the case at bar suit

was filed on April 4, 1951, and plaintiff in his verified motion states that he then believed Myrtle Renner knew of the agreement. Yet no attempt was made to interview her until more than sixteen months later, at a time just a few days before the hearing was to resume after a lengthy adjournment of court. No adequate explanation of this long delay is shown, plaintiff relying merely upon the fact that he and his counsel had thought some of his witnesses, produced when the trial was started in January, 1952, would testify to the making of the agreement, and that they were disappointed in not obtaining such testimony from any of them. Such circumstances fail to show the exercise of due diligence required by the rule, and clearly cannot justify a reversal in this case. The disposition of motions of this nature is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in a case of manifest abuse.

The decree of the circuit court is affirmed.

*Decree affirmed.*