**Olin Industries, Inc., Plaintiff-Appellant, v. Andrew J. Wuellner and John C. Fallon, Copartners, Defendants-Appellees.**

**Term No. 53–O–11.**

Opinion filed January 26, 1954. Rehearing denied February 23, 1954. Released for publication February 26, 1954.

EMERSON BAETZ, of Alton, for appellant.

VERLIE, EASTMAN & SCHLAFLY, of Alton, and POPE & DRIEMEYER, of East St. Louis, for appellees; J. F. SCHLAFLY, JR., of Alton, and FRANK M. RAIN, of East St. Louis, of counsel.

MR. PRESIDING JUSTICE SCHEINEMAN delivered the opinion of the court.

The defendants are a construction firm which contracted to build a shop for the plaintiff corporation. The shop was operating in production during construction. One of plaintiff's employees was injured while

at work, by a pane of glass falling from a metal sash, which was tilted open at a 45-degree angle. The employee received workmen's compensation, and the employer, as subrogee, brought this suit, alleging that the window was not installed according to specifications, and that the defendants were negligent.

The case was heard by the court without a jury and resulted in a judgment for defendants. The plaintiff appeals on the sole ground that the judgment is against the manifest weight of the evidence.

The evidence indicates that the sash in question was an upper window of several tiers, each containing six lights; that the injured employee proceeded to open a lower window, and then a pane of glass (15″ by 19″) fell from the upper tier and struck him. The glass was set in the sash with small metal clips, and then glazed with a plastic compound, which would remain elastic, instead of becoming hard like putty. The glazing was on the underneath side as the window stood open. The metal sash was drilled with nine holes for each pane, in which the clips could be inserted, but the pane in question had been affixed with four clips.

The specifications for these windows provided an option of several named types of plastic putty, one of which was used. They also provided that the "glass shall be pressed to an even bearing in putty, firmly clipped, and rabbets puttied to neat true bevels and sight lines."

From the foregoing, the plaintiff contends that the elastic compound could not be adequate to hold the glass in place, that insufficient clips were used, and that the glass was not firmly clipped in place or it would not have fallen.

For the defense, the glazier who did the work, and other construction men and engineers testified in substance as follows:

That ordinary putty sets hard in a couple of days, but the elastic compound specified for use in the metal sash required two or three weeks to set. That it retains some elasticity, but when set it has considerable strength, and will hold the glass. That metal sash may be slightly uneven and the clips are inserted where the glass makes good contact with the mullion, that two or three clips are commonly used, never more than four, and that number only in movable sash. That the clips help hold the glass in place until the glazing compound sets.

There was also testimony that this accident occurred about three days after the windows had been placed, that plaintiff's shop foreman had been warned of danger of operating them, that the mechanism to open and close the windows was not yet attached, and the foreman had been told, if he desired to change the ventilation, he should ask defendants' employees to do so.

The professional engineer who inspected the work in progress for the architect testified that, after this occurrence, he had eight or ten lights removed for inspection, and found that they had all been properly installed. An attempt was made to impeach him with a previous statement that he found only a few clips in place. He explained that he had not been particularly looking for clips, but to see if the glass was well bedded and puttied in, and that it had been. He stuck to his assertion that he found no improper installation, and he had accepted the work in behalf of the architect.

In rebuttal, two engineers employed by plaintiff testified that, in their opinion, this type of glazing compound would not give adequate support to the glass without clips. Neither expressed any opinion as to how many clips were usual or proper.

Thus there is some contradiction in the testimony as to the ultimate strength of the glazing compound. But it remains uncontradicted that four is the maxi-

mum number of clips used in each window light, and that this particular pane had been attached with four, and had been glazed with the type of compound specified. Plaintiff argues that it was not possible to produce any evidence of negligent workmanship on the broken pane, and that, as it was one of a series, proof of defects in others of the series was sufficient. Citing Wigmore, Evidence, 3rd Ed. Vol. II, pp. 418–423.

█ The citation has no application here, because the other panes of glass inspected were not found defective. Assuming some of them had less than four clips, that cannot raise any inference of less in this particular pane, because plaintiff's own safety inspector had found it did contain the required number.

█ We conclude that there was substantial evidence upon which to find that the installation of the window was according to specifications, and by the usual and customary methods, and that if the given warning had been observed until the compound had set, the glass would have been adequately supported.

██ The mere fact that there is some contradiction in the evidence would not justify this court in reaching a different conclusion than that of the trier of fact. *Becherer v. Belleville-St. Louis Coach Co.,* 322 Ill. App. 37, 42. To be against the "manifest weight of the evidence" requires that an opposite conclusion be clearly evident. *Schneiderman v. Interstate Transit Lines,* 331 Ill. App. 143, 147.

In our opinion the judgment was amply justified, there is no basis for holding it to be contrary to the manifest weight of the evidence, and the judgment is affirmed.

*Judgment affirmed.*

BARDENS and CULBERTSON, JJ., concur.