Charles Peterie, Plaintiff-Appellee, v. Guy A. Thompson, Trustee, Missouri Pacific Railroad Company, Defendant-Appellant.

**Term No. 56–F–12.**

Fourth District.

May 1, 1956.

Released for publication June 4, 1956.

Walker & Williams, of East St. Louis, for defendant-appellant; T. T. Railey, of St. Louis, Missouri, of counsel.

Hubbell & Mattes, of St. Louis, Missouri, and Goldenhersh & Goldenhersh, of East St. Louis, for appellee.

PRESIDING JUSTICE BARDENS delivered the opinion of the court.

Plaintiff recovered a $75,000 judgment against defendant entered on a jury's verdict in the Circuit Court of St. Clair county for personal injuries sustained in a crossing accident in Kansas City, Missouri. Defendant's motion to dismiss based on the doctrine of forum non conveniens was not sustained by the trial court. This ruling, together with assignments of error in excluding evidence, in instructing the jury, as to the manifest weight of the evidence, and as to excessiveness of verdict forms the basis of defendant's appeal. These matters were preserved for review by appropriate post-trial motions overruled by the trial court.

Plaintiff's case consisted of testimony by himself and four medical witnesses and developed the following: that plaintiff, a 45-year old railroad worker, was driving home from work at 4:45 A. M. on a dark, rainy morning; because of poor visibility, he could see only 30 or 40 feet ahead with his bright lights on and only 5 feet to the side; as he came to a multiple track crossing, he observed the flasher lights working and came to a stop; that he faintly saw a cut of 6 or 8

freight cars moving in front of him through the crossing; a few seconds after the cars cleared the crossing the flasher lights went off and the bell stopped ringing; that he then started slowly forward in low gear looking to the right and left before reaching the track; he maintained a constant speed of 5 to 10 miles an hour until he was struck by a single unlighted boxcar being switched through the crossing, travelling 10 to 15 miles per hour; the boxcar struck his car just about in the middle and shoved it sideways 150 feet down the track before stopping; that the switching crew was aware of the danger resulting from their switching operations during the limited visibility and earlier the same night one of its employees had been assigned to flagging the crossing. It is undisputed that the signals at the crossing were manually operated from a tower 250 feet away. With respect to plaintiff's injuries the evidence showed that plaintiff was suffering a traumatic neurosis as well as injury to the lower back and was not capable of following any type of employment.

The defendant's testimony developed that the single freight car was switched through the crossing about 80 feet behind the last of the nine-car cut; that the flasher lights were still operating; that believing plaintiff's auto might continue over the crossing after the last of the nine-car cut had passed and knowing that the single car was following, one of defendant's employees began to yell and run toward the crossing. The engineer of the switch engine, the foreman, one brakeman and the field man of the switching crew testified that though it had rained intermittently during the evening, at the time of the accident it had stopped raining; that though visibility was not the best, they had no difficulty in passing signals by lantern for distances up to 1500 feet. The engineer did not see the car before the accident and did not know whether the flasher lights were operating at the time of the accident. The field man's best recollection was that the flasher lights

were operating at all times but he conceded that he could be in error.

Defendant's claim agent testified that he went to the plaintiff's home to get a statement and that he typed up a statement in plaintiff's presence as they talked; when completed, plaintiff read it over, said it was a fair statement but at his wife's direction refused to sign it. Plaintiff testified he refused to sign because there was "a lot of stuff in it that was wrong." This statement was offered in evidence but its admission was denied by the Court; however, the claim agent testified to as much of the conversation as was contradictory to plaintiff's testimony at the trial.

Defendant's motion to dismiss the action upon the doctrine of forum non conveniens was predicated upon the following circumstances: that the injuries were sustained in an accident in Kansas City, Missouri, and that the plaintiff and all witnesses who testified were residents of Missouri living approximately 300 miles from Belleville, Illinois; that no part of plaintiff's cause of action took place in Illinois, and that no citizen of St. Clair county, Illinois, was interested in the litigation; that trying the case in St. Clair county would involve substantial expense to the county which was already operating on a deficit; that defendant would be put to great expense and inconvenience in bringing witnesses to testify, and that the defendant would be without the power to subpoena witnesses who were unwilling to testify, and would have to rely upon depositions to be read into the evidence at the trial. These matters were set forth in an affidavit filed by defendant. No counteraffidavit was filed disputing any such facts or showing any new facts or reasons why the Circuit Court of St. Clair county should retain jurisdiction of the case.

The doctrine of forum non conveniens was recognized and applied in Illinois by our Supreme Court in the case of Whitney v. Madden, 400 Ill. 185. The

104

Court said that if it is apparent that an appropriate forum is available and the relief is sought in local courts by a nonresident for a transaction which occurred outside of the territorial boundaries of the state for the purpose of frustrating the defendant or if the bringing of the action unduly burdens the defendant or causes him great and unnecessary inconvenience or unnecessarily burdens the court, the trial court may, in its discretion, decline the jurisdiction of the case. The doctrine was also applied by the Supreme Court of the United States in Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 91 L. Ed. 1055. Under headnote 3 of this case the Court states as follows: "Among the considerations to be weighed in determining whether a court will decline to exercise jurisdiction on the ground that another forum is more convenient are the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses, possibility of view of the premises if view would be appropriate to the action, and all other practical problems that make trial of the case easy, expeditious and inexpensive, questions as to the enforceability of a judgment if one is obtained, and relative advantages and obstacles to a fair trial." The Court also points out that factors of public interest have a place in applying the doctrine and that when litigation is piled up in congested centers instead of being handled at its origin that administrative difficulties follow. Following this line of thought, the Court makes the following observations: "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." Also: "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of law, and in law foreign to itself." We might add that the

105

taxpayers of the community, also, are entitled to some consideration.

The United States Supreme Court in Southern R. Co. v. Mayfield (Missouri case) 340 U. S. 1, 95 L. Ed. 3, held that federal law does not limit the power of state courts to deny access to suitors under the F. E. L. A. if the policy is enforced impartially so as not to discriminate against suits under the act nor offend the Privilege and Immunities clause. The Court vacated the judgment of the Supreme Court of Missouri because that Court had acted upon the assumption that state courts were compelled in all events to accept jurisdiction in such cases.

See also F & F Laboratories v. Chocolate Spraying Co., Inc., 6 Ill.App.2d 299, 300; 127 N.E.2d 682; Johnson v. Chicago, B. & Q. R. Co., 66 N.W.2d 763 (Minn.); St. Louis-San Francisco R. Co. v. Superior Court, Creek County, 290 P.2d 118 (Okla.).

Relying on the Mayfield case, the Supreme Court of California has overruled its prior decisions to the contrary and applied the doctrine in Price v. Atchison, T. & S. F. Ry. Co., 42 Cal.2d 577, 268 P.2d 457, 43 A.L.R.2d 756 (note at 774), certiorari denied 348 U. S. 839, 99 L. Ed. 661. The Price case was a consolidation of two causes both of which were dismissed by the lower court. One judgment was affirmed but the other was reversed upon a stipulation of counsel the statute of limitations was about to run against that action.

We have previously set out the substance of the motion filed in the case at bar and the fact that no counter-affidavits were presented. It is our opinion that there were sufficient grounds alleged to have justified the Court in dismissing this action. However, it appears that the statute of limitations will run in August of 1956. Considering the time element involved from this decision to the time of the running of the statute, it would be quite impractical to expect that plaintiff would have the opportunity to exhaust his

appeal remedies in this case. For this reason and for the reason that much time and expense have been already devoted to the case we do not reverse on this ground.

■■ We turn now to the consideration of other matters raised by the defendant in seeking a reversal. The first of these is the contention that the verdict is against the manifest weight of the evidence. Since the case involves disputed questions of fact which were presented to a jury, in order to find in defendant's favor on the issue of manifest weight of evidence, a conclusion on the facts opposite to that reached by the jury must be clearly evident. Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267, 117 N.E.2d 565. Such is not the case here. The evidence produced on behalf of the plaintiff is sufficient to sustain the verdict. The evidence on behalf of the defendant, in our opinion, is not either sufficient either in overwhelming numerical strength or by reason of physical facts and circumstances in evidence to clearly show that the verdict of the jury was against the manifest weight. We have previously detailed the evidence and it shows that the defendant's switching crew was aware of the increased hazard due to limited visibility and shows no manifest weight of evidence with regard to whether or not the signal lights were working after the first cut of freight cars was switched through the crossing.

■ Defendant excepted to the refusal of the trial court to allow Defendant's Exhibit "A" into evidence. This was the unsigned typewritten statement prepared by defendant's claim agent in the presence of the plaintiff. The claim agent was permitted to testify to any portions of the matter set out in the statement which were considered to be admissions against interest on behalf of the plaintiff. Since the plaintiff did not sign the instrument or authorize a signature to it, we see no error in its refusal into evidence by the trial court. It remained in the category of a report. Wiedow v. Carpenter, 310 Ill. App. 342, 34 N.E.2d 83.

On behalf of the plaintiff the Court gave instruction No. 6 which reads as follows: "The Court instructs the jury that the plaintiff's complaint, as amended, alleges that on August 28, 1951, plaintiff while in the exercise of the highest degree of care for his own safety was driving his automobile over a certain railroad crossing owned and maintained by the defendant and that the defendant negligently caused and permitted a certain boxcar to run toward and over the said crossing and that it negligently caused and permitted the said boxcar to run toward and over the said crossing without giving any reasonable, adequate and timely warning of the approach and movement of said boxcar, and that the defendant maintained a signal standard at said crossing and negligently permitted and caused it to be turned off at a time when a boxcar was being propelled toward and across the said crossing when the defendant knew or by the exercise of ordinary care should have known that the plaintiff would likely rely on the said signal standard and his life and limb would likely be endangered thereby and that as the proximate result of the foregoing conduct of the defendant, the boxcar did collide with plaintiff's automobile and plaintiff sustained injuries and damage.

"The defendant admits that it owned the said right of way and crossing and denies each and every charge of negligence.

"If you believe from the preponderance of the evidence under the instructions of the Court that the defendant was guilty of the acts as alleged, and that this was negligence, and that such negligence, if any, was the direct and proximate cause of the injuries complained of in this case, and that at the time and immediately prior thereto the plaintiff was in the exercise of the highest degree of care for his own safety, then you should find the issues in favor of the plaintiff."

Defendant contends that the first paragraph is subject

108

to the criticism made by the court in Signa v. Alluri, 351 Ill. App. 11, 113 N.E.2d 475. With this contention we do not agree. It appears to us that the Court in giving this instruction was complying with the rules laid down in the cited case because the instruction attempts to summarize the pleadings rather than set them out in detail as alleged in the complaint. While it is true that the instruction did not repeat in paragraph 1 that these were allegations made by the plaintiff, the paragraph is not so long that the jury should have been misled into believing that these were assertions being made by the Court. This conclusion is strengthened by the fact that the second paragraph states that the defendant denies each and every charge of negligence, and thus further directs the jury to the fact that the first paragraph were allegations of the plaintiff. It is true also that the instruction does not inform the jury that the defendant denied the allegation that the plaintiff was exercising due care. However, the instruction is much stronger in defendant's favor in that it required the plaintiff to prove that he was in the exercise of the highest degree of care for his own safety. Defendant asserts that the instruction allowed the jury to wander afield as to the basis of negligence. However, the third paragraph of the instruction confines the jury to the negligent acts that are alleged. Nor does the case of Walton v. Greenberg Mercantile Corp., 1 Ill.App.2d 99, 116 N.E.2d 197, bear upon the question of this instruction. In the Walton case the instruction held faulty omitted any reference to contributory negligence. In our opinion there was no error in the giving of instruction No. 6.

■ Complaint is also made by the defendant of the plaintiff's given instruction No. 7 on the question of damages because in paragraph 1 it read "You will award the plaintiff such sum as you find and believe from the evidence" and omitted the requirement that plaintiff was required to prove his damages by a "pre-

ponderance" of the evidence. This objection is not well taken because in each of the subsequent paragraphs, which were four in number, setting out the different elements of damages claimed the jury was told that it must find these elements from the "preponderance" of the evidence. As stated in the case of Smith v. Kroger Grocery & Baking Co., 339 Ill. App. 501, 508, 90 N.E.2d 500, it is not necessary that this requirement be constantly repeated if it is clearly stated in the instruction.

■ Lastly, defendant claims that the verdict is the result of passion and prejudice and should therefore be set aside. Plaintiff produced four medical experts as his witnesses and their testimony was to the effect that the plaintiff was totally and permanently disabled from doing any kind of work. No medical testimony was offered by defendant. It is undisputed that the plaintiff's income at the time of the injury was $3,600 a year. He was 45 years of age at the time of the accident and 48 years at the time of the trial. Defendant admits in its brief that plaintiff's future earnings, discounted at 3 per cent, would be approximately $60,000, but in addition to that figure he had actually lost in wages at the time of trial approximately $13,000. While it is true that the plaintiff had a crying spell while he was on the witness stand, when the verdict of $75,000 is considered in relation to the loss of earnings figures, it seems to us there is not sufficient basis for a conclusion that the verdict was the result of passion and prejudice. Furthermore, this question was presented to the trial court who was in a much better position than we are to judge of the effect of this crying spell on the jury and the trial judge refused defendant's contentions.

We are of the opinion that the judgment in this case is free of reversible error and it therefore is affirmed.

Judgment affirmed.

CULBERTSON and SCHEINEMAN, JJ., concur.