John Henderson, Infant, by Charles L. Henderson, His Next Friend, and Charles L. Henderson, Individually, Appellants, v. James Shives, Appellee.

Gen. No. 10,937.

Second District.

June 7, 1956.

Rehearing denied June 26, 1956.

Released for publication June 26, 1956.

476

Gray, McIntire, Petersen & Ackman, of Kankakee, for plaintiffs-appellants.

Mann, Stifler & Snyder, of Danville, and Bell & Smith, of Watseka, for defendant-appellee.

JUSTICE EOVALDI delivered the opinion of the court.

This action was brought to recover damages for personal injuries sustained by John Henderson, a minor, and for damages sustained by his father, Charles L. Henderson, by reason of medical expenses and loss of his son's services, occasioned by the alleged negligence of the defendant in the operation of his truck. The jury returned a verdict for the defendant, upon which the court entered the judgment from which this appeal is taken.

Plaintiffs' motion for a new trial, and their supplemental motion for new trial, the latter being in the nature of a motion based upon newly discovered evidence, were denied. The plaintiffs' theory is that the court erred in giving to the jury defendant's instruction 4; that the verdict is contrary to the manifest weight of the evidence; and that the court erred in denying plaintiffs' supplemental motion for new trial.

Defendant's theory of the events which occurred immediately prior to the collision involved in this suit is that the plaintiff, John Henderson, who was the driver of a 1941 Ford tudor sedan, had driven the automobile partially off the pavement to his right, and, in attempting to return to the pavement over a three or four inch drop-off, lost control of the automobile, crossed his traffic lane, and struck the left rear wheels of defendant's cattle truck, which was in its own lane of traffic.

On June 29, 1953, at about 3:30 a. m., the plaintiff, John Henderson, who lacked a few days being nineteen years old, was driving a black 1941 Ford tudor sedan, containing himself and four other boys, northbound on U. S. Highway 54 near the outskirts of Thawville, Illinois, at which time a collision occurred between the plaintiff's car and a Chevrolet truck, bound in the opposite direction, owned and operated by the defendant, who was returning from Chicago where he had de-

478

livered a load of cattle at the Chicago Stockyards about midnight.

The collision occurred in the south part of a long gradual S-curve, each part of which is eight-tenths of a mile long, the curvature being to the right for southbound traffic and to the left for northbound traffic. The point of impact was described in the evidence as being about thirty feet south of the intersection of a gravel road with U. S. Highway 54. Neither vehicle had been on, nor were they destined for, said gravel road. U. S. Highway 54 is, at that point, a concrete surfaced two-lane highway 24 feet wide, divided by a center line into lanes, and runs generally in a north and south direction.

Plaintiff, John Henderson, testified that he was driving at about 50 miles per hour, that the lights and brakes of his car functioned properly, that he was driving on the right side of the highway, and that he had no specific recollection of seeing the truck or of the impact itself.

Defendant testified that he noticed the lights of a car approaching him, but hadn't noticed anything unusual about its position on the roadway until it was within 100 to 150 feet of his truck; at that time the car was partially off the pavement and coming back on; defendant tried to avoid the oncoming car; and, to keep it from hitting him, took to the shoulder of the road, but could not get out of its way. He testified that the car driven by plaintiff, John Henderson, hit the left rear dual wheel of the truck, pushed the rear axle far enough back that the hydraulic brake hose was pulled in two and the truck rolled 400 to 425 feet down an embankment and along the right-of-way, without any brakes. After the collision, the plaintiff's Ford continued in a northerly direction, coming to rest on its right side in the southbound lane at a point about

215 feet from the point of impact and was found headed south.

Plaintiffs' witnesses, Leonard Worden and Elmer Nelson, the latter a state highway policeman, testified that there was on the surface of the highway at about the point of impact a dual wheel skidmark which continued on and was traceable to the defendant's truck where it had come to rest, and that this skidmark at about the point of impact was between 1 and 1½ feet over the center line in the northbound lane. Worden further testified that he had seen the defendant and two other men standing by this skidmark after the collision and that one or more of them had been scuffing at the mark with their feet. Defendant denied the presence of said tire mark and the alleged scuffing. Defendant was corroborated by the witness, Russel Weakley.

While the witnesses for defendant were measuring the distance that the 1941 Ford slid on its side, they also noticed a black tire mark alongside the drop-off on the side of the pavement on which John Henderson was driving, which was 152 feet long and ended 40 feet before the point of impact.

 The plaintiffs contend that the verdict was against the manifest weight of the evidence. The jury saw and heard the witnesses. Where disputed questions of fact are presented to a jury and the jury passes upon them, unless palpably erroneous, the finding of fact will not be disturbed by the reviewing court. Griggas v. Clauson, 6 Ill.App.2d 412; People v. Hanisch, 361 Ill. 465; Krug v. Armour & Co., 335 Ill. App. 222; Becherer v. Belleville-St. Louis Coach Co., 322 Ill. App. 37; Rembke v. Bieser, 289 Ill. App. 136; Leahy v. Morris, 289 Ill. App. 99. To be against the "manifest weight of the evidence" requires that an opposite conclusion be clearly evident. Griggas v. Clauson, supra, at p. 419; Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267; Schneiderman v. Interstate Transit Lines, Inc., 331

Ill. App. 143, 147. We have examined the record and do not find that the verdict is manifestly against the weight of the testimony. Under these circumstances we have no right to set aside the jury's finding.

The plaintiffs further contend that their supplemental motion for new trial should have been granted on the ground of newly discovered evidence. In support of same, they submitted the affidavit of Paul Eshleman, one of the witnesses who testified on behalf of defendant at the trial; the affidavit of Paul F. Davidson, attorney engaged by Robert Stephens, the owner of the Ford automobile involved in the collision, which was being driven by plaintiff, John Henderson; and the affidavit of Elmo F. Petersen, one of plaintiffs' attorneys in this cause.

In his affidavit, Paul Eshleman stated that he was proprietor of the Tower Service Station at Thawville, Illinois, on June 29, 1953, and for sometime thereafter; that the 1941 Ford sedan driven by John Henderson on said date which was involved in the accident, was stored at said service station in the custody of affiant immediately after the accident and that the said vehicle was still at said station. Affiant further stated that on or about the 30th day of June 1953, a certain person who represented himself to be an adjuster for Country Mutual Casualty Company and who represented that the said company then had a policy of liability insurance in force covering the liability of James Shives, the defendant in said action, requested said affiant to detach from the said motor vehicle the right rear tire thereof and that pursuant to this request, the affiant caused the right rear tire of the said vehicle to be removed from the said vehicle and replaced it with another tire furnished by the said person who represented himself as such adjuster, and that the tire which was on the said vehicle thereafter was not

481

the same tire which was on the vehicle at the time of the accident.

Affiant further stated that the original tire was taken to the home of affiant at the request of said person.

The affidavit of attorney, Paul F. Davidson, is that on or about the 29th or 30th of June 1953, he was engaged by Robert Stephens to represent said Robert Stephens with respect to a claim which the said Robert Stephens had against one James Shives growing out of the accident which occurred on the 29th day of June 1953, near Thawville, Illinois, with a 1941 Ford sedan automobile being the property of said Robert Stephens, involved in a collision with a certain motor truck operated by said James Shives. Affiant further stated that the accident out of which said claim arose was the same accident which was the subject matter of the instant cause. Affiant further stated that the said Robert Stephens was on June 29, 1953, and still is, to the affiant's knowledge, the owner of the said 1941 Ford sedan automobile, and that the affiant had represented him at all times since said date; that neither the affiant nor the said Robert Stephens at any time, to affiant's knowledge, authorized Country Mutual Casualty Company, or any representative thereof, or Paul Eshleman, to remove from the said automobile any tire, tires, or other parts thereof, and that the removal of a tire, or tires, if any, and the substitution of another tire or tires for those removed, if any, was done without the knowledge, consent, or authorization of the owner of the said vehicle to affiant's knowledge, or of said affiant, and that the fact of such removal of a tire from the said vehicle and the substitution of another tire therefor was unknown to the affiant prior to September 9, 1955.

The affidavit of Elmo F. Petersen, one of plaintiffs' attorneys, is to the effect that his firm was retained to represent John Henderson and Jerry Sigler and

their respective fathers on or about July 2, 1953; that on July 3, 1953, the affiant personally inspected the 1941 Ford automobile which the said John Henderson was driving at the time of the accident, which was the subject matter of the said cause, which was the property of one Robert Stephens; that at the time of such examination the said automobile was fully equipped with tires, including the tire on the right rear wheel thereof. The attorney further stated that since that date, he had investigated the said accident and tried the said lawsuit, but until August 31, 1955, more than two months after the trial of the said cause, affiant was unaware that the right rear tire of the said vehicle had been removed and another tire substituted therefor, prior to this affiant's examination of the vehicle, and that the affiant had never seen any tire purporting to be the original tire on the vehicle at the time of the accident; that on August 31, 1955, John Johnson, who was on June 29, 1953, and for a short time thereafter, an adjuster for the Country Mutual Casualty Company, advised the writer that such removal of the original tire and the substitution of another tire had actually been made shortly after the accident in question, and that such removal and substitution was arranged by the said John Johnson with Paul Eshleman upon orders given to said John Johnson by his superiors in the Country Mutual Casualty Company.

■ There is no showing in either the motion or in the affidavits that the production of the tire will serve to either impeach or discredit the testimony of defendant, or of his witnesses, Eshleman and Walter Milligan, all three of whom testified that the right rear tire on the inside of the 1941 Ford was scuffed. Said witness Eshleman made a detailed affidavit covering two pages as to the reasons for the removal of the tire. There is no showing by the affidavits of the attorneys

483

attached to the supplemental motion for new trial that said witness refused to allow them to see the tire in question. There is no showing in any of the affidavits that the tire did not contain the scuff marks as testified to. There is no showing that defendant had knowledge of, participated in, or sanctioned the action of the adjuster for the insurance company in having the tire removed and in allowing it to remain in the possession of witness Eshleman, who has had possession of the car during all the time since the collision. Defendant has a substantial interest in the outcome of this case for not only this, but other suits might have been filed and may be pending as a result of the collision. In the affidavit of plaintiffs' attorney Petersen, it appears that his firm was also retained by Jerry Sigler, who was in the Ford, and by his father, in the prosecution of their claims. In the affidavit of attorney Davidson it appears that he was retained by Robert Stephens, the owner of the automobile, who also was riding in the car being driven by plaintiff, to enforce his claims. Defendant might be compelled to pay over and above the limits of his policy of insurance. We most emphatically disapprove of the aforesaid actions of the adjuster for the insurance company in this case. However, there is not sufficient showing of diligence on the part of plaintiffs as would justify granting their motion for new trial based on the ground of newly discovered evidence. Had plaintiffs been diligent, they would have inquired of their witness, Elmer Nelson, state patrolman, as to his conversations with the defendant at the scene of the accident immediately after the accident, and would have followed up their inquiry. Officer Nelson testified on direct examination that he came to the scene within minutes of the accident, and had a conversation with James Shives at that time. "I asked him in reference to the marks and the tire track going off the road to where his truck

was at and I asked him if he was on the wrong side of the road. He said no, they had run off the pavement and when they pulled back on the pavement they hit him in the side, meaning the boys' car. He showed me a black tire mark on the edge of the north-bound lane of traffic on the East edge. He could never show me where it came back on the road. He took me to what would be an angle there. We call it north and south. It would be south of where the accident happened, about 50 feet. He showed that to me, said that was where the tire rubbed against the pavement, but could never show me where the tire come back on the pavement."

On cross-examination Officer Nelson testified that he was at the scene between 3:30 or quarter to 4:00 the morning of the accident. "I asked Jim Shives what happened and he told me he was on his own side of the road and that the other fellows had cramped from being on the wrong side, having been off the road. He did not take me over there and show me on the other side of the pavement where there is a drop-off of 6 or 8 inches. It may be 3 or 4 inches. Jim Shives told me that the boys had pulled back on the road. I won't say the exact distance. He never told me that in bringing the car back on the pavement, it had struck the back end of his truck. He told me that when it done that, it bumped the back wheels of his truck and that destroyed the braking efficiency of his truck." In Bemis v. Horner, 165 Ill. 347, at p. 353, the court stated:

"The rule is well settled that when the new evidence tends merely to discredit or impeach another witness it will not satisfy the requirements of the law for a new trial."

To the same effect is People v. McCullough, 210 Ill. 488, at p. 518, and Chicago & N. W. R. Co. v. Calumet Stock Farm, 194 Ill. 9, the latter case stating, at page

485

16: "The law is well settled that a new trial will not be awarded on the ground of newly discovered evidence when the evidence is cumulative or by way of impeachment merely, and in its nature is not conclusive." Applications for new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, but such applications are to be subjected to the closest scrutiny. The burden is on the applicant to rebut the presumption that the verdict is correct and to show that there has been no lack of due diligence. People v. LeMorte, 289 Ill. 11, at pp. 21–22; Powers v. Browning, 2 Ill.App.2d 479. On page 486 of its opinion, the court, in Powers v. Browning, supra, quotes from People v. Dabney, 315 Ill. 320, as follows:

" 'The evidence must fulfill the following requirements: First, it must appear to be of such conclusive character that it will probably change the result if a new trial is granted; second, it must have been discovered since the trial; third, it must be such as could not have been discovered before the trial by the exercise of due diligence; fourth, it must be material to the issue; and fifth, it must not be merely cumulative to the evidence offered on the trial (citing cases).' Stocker v. Scherer, 1 Ill.2d 405."

In Cohen v. Sparberg, 316 Ill. App. 140, the court on pages 142–143 quotes from Chicago & A. R. Co. v. Raidy, 203 Ill. 310, 317, as follows:

"It cannot be the practice of courts to allow important matters to go to trial, and because one party is not satisfied with the results of it, let him go out and try to get facts which will enable him to do better at another trial, and rely upon such after-ascertained matters as a basis for a new trial."

As stated in Stocker v. Scherer, 1 Ill.2d 405 at p. 409:

"The disposition of motions of this nature is largely

discretionary with the trial court, and the exercise of its discretion will not be disturbed except in a case of manifest abuse."

■ Even treating appellants' affidavits in support of their supplemental motion for new trial in a generous light, they still fail to establish other than by conjecture what the condition of the tire involved actually is now or was at the time it was taken from the Ford. As previously pointed out, appellants do not in their motion, and affidavits attached thereto, state that the tire in question had no scuff marks on it; they do not state that said witness Eshleman or anyone else have at any time refused them access to same. Plaintiffs' attorney Petersen, from his affidavit, stated that he learned on August 31, 1955, about the removal of the tire. He had at least from that date to September 12, 1955, the date the supplemental motion for new trial was filed, to make a thorough investigation as to the conditions at that time. Yet his affidavit makes no mention of the condition of the tire then. Eshleman's affidavit attached to said motion does not contradict his testimony offered at the trial on behalf of defendant that the tire had scuff marks on the inside. No positive statement contradicting defendant's evidence is made in the affidavits which would warrant this court in holding that the lower court abused its discretion in denying the supplemental motion for new trial based on the affidavits attached thereto.

At the request of the defendant the court gave his instruction No. 4, as follows:

"The jury are instructed that, even though they find from the preponderance of the evidence that the defendant, James Shives, was guilty of negligence which contributed to the injury in question, yet if they also believe from the preponderance of the evidence that the plaintiff, John Henderson, could have avoided the injuries to himself by the exercise of ordinary care on

487

his own part, and that said plaintiff did not exercise such care, then the said plaintiff cannot recover in this case, and on the question of care for his own safety, the burden of proof is on the plaintiff."

This instruction must be read in connection with the plaintiffs' instructions Nos. 6 and 7, as follows:

"No. 6

"You are instructed that the only care and caution required of the plaintiff John Henderson was such due care and caution for his own safety as a reasonably prudent and cautious person would have exercised under the same or like conditions and circumstances which surrounded him before and at the time of the alleged accident. He was not required to exercise extraordinary care and diligence for his own safety.

"No. 7

"The jury are instructed that if you find from the preponderance of the evidence in this case that the plaintiff John Henderson at the time of his injury, if any, was under the age of 21 years then in such event you are instructed that the degree of care required of him was such care as a boy of his age, intelligence, capacity and experience would exercise under the same or similar circumstances."

 Instructions are taken as a connected series, and the jury cannot single out one instruction and disregard others, but must take all of the instructions together as the law. When we compare defendant's instruction 4 with plaintiffs' instructions 6 and 7, it is apparent that if any fault appeared in said instruction 4 of the defendant, it was overcome by plaintiffs' instructions 6 and 7. We do not see where the jury could have been misled by the instruction complained of. In the recent case of Allied Mills, Inc. v. Miller, 9 Ill.App.2d 87, wherein the court was dealing with a

peremptory instruction, the court held that principles of law missing in one instruction may be supplied by others.

Finding no material error in the record, the judgment of the circuit court will be affirmed.

Judgment affirmed.

DOVE, P. J. and CROW, J., concur.