Anna Veselich, Administratrix of Estate of George Veselich, Deceased, and Anna Pozek, Administratrix of Estate of John Pozek, Deceased, Appellants, v. Le Noel Lichtsinn, and Louis Lieberman, Appellees.

Gen. No. 10,927.

Second District.

July 5, 1956.

Released for publication July 20, 1956.

373

Corrigan & Mackay, of Wheaton, and Louis F. Cainkar, of Chicago, for appellants; William E. Corrigan, of counsel.

Lord, Bissell & Brook, Robert L. Brody, and George J. Gore, all of Chicago, for appellees; Gordon R. Close, and Richard E. Mueller, of counsel.

JUSTICE EOVALDI delivered the opinion of the court.

This was an action to recover damages for the deaths of the plaintiffs' intestates, they having been killed while crossing over Route 66 west of the Downers Grove—Lemont Road in Du Page county, Illinois. The case went to the jury upon the issues of negligence of both defendants as to the claim of Anna Veselich,

administratrix of the estate of George Veselich, deceased, and to the jury in reference to the claim of Anna Pozek, administratrix of the estate of John Pozek, deceased, as to the defendant Lichtsinn. The jury returned verdicts finding both defendants not guilty. Plaintiffs' motion for new trial was denied and judgment entered on the verdicts.

The plaintiffs' theory of the case is that the overwhelming weight of the evidence supported their version of the accident, which was that the plaintiffs' intestates were crossing Route 66 at a place that could be considered the crosswalk; that under either the plaintiffs' or defendants' version of the case, the questions of liability were very close and were for a properly instructed jury; that the court's instructions gravely misinformed the jury; and that the court erred in denying plaintiffs' aerial photographs.

Defendants' theory is that the virtually undisputed evidence shows that the plaintiffs' intestates were killed on a Sunday evening in October, while endeavoring to cross an arterial highway in the dark, in heavy traffic, seventy-five to one hundred twenty-five feet west of the intersection of Route 66 with Downers Grove Road, when they stepped back from the center of the highway into the path of defendant Lichtsinn's automobile west bound on Route 66; that contrary to the plaintiffs' contention, the facts were not close; that in addition, there was not a scintilla of evidence that the plaintiffs were crossing at a crosswalk or were in the exercise of due care and caution for their own safety; that not only were the fact questions of negligence and contributory negligence properly resolved by the jury, but as a matter of law the evidence supported a finding only for the defendants.

On Sunday, October 11, 1953, shortly after 6:00 p. m., the decedents, John Pozek and George Veselich, attempted to cross Route 66 from the north shoulder to

375

the south shoulder of the highway at a point seventy to one hundred twenty-five feet west of the intersection of Route 66 with Downers Grove Road. The decedents left John Pozek's home, which was located approximately six hundred feet north of Route 66 on the west side of Downers Grove Road, in Pozek's car to permit Veselich to board the bus at Route 66 on Downers Grove Road, leaving Pozek's home at 6:12 or 6:13 p. m. The bus was due to arrive at the southwest corner of the intersection at 6:22 p. m., usually arriving at 6:25 p. m.

Pozek apparently drove his car to Route 66, turned north parking the car on the north side of Route 66 one hundred thirty to one hundred forty feet west of Downers Grove Road. Route 66 was heavily traveled at the time and Pozek and Veselich apparently reached the center of the highway and waited for east-bound traffic to break in order to complete their crossing. The defendant Lichtsinn was driving his car in a westerly direction on Route 66 in the inner lane at fifty to sixty miles per hour, while the defendant Lieberman was driving in the inner lane in an easterly direction towards Chicago at about twenty to thirty miles per hour in heavy east-bound traffic. At the time of the occurrence the weather was clear and cool and it was dark. According to the testimony of Mr. Scudder, who was north bound on Downers Grove Road, the traffic was so heavy on Route 66 that he waited five to ten minutes for traffic on Route 66 to open so that he could cross the highway in his vehicle. He testified that the accident happened between 6:15 and 6:30, and traffic from Downers Grove Road had to stop for traffic on Route 66.

As the defendant Lichtsinn approached the point where Pozek and Veselich were standing in the middle of the highway, he testified that they stepped back into the west-bound traffic lane into the path of his vehicle.

376

He attempted to avoid the men, and failing to do so, struck them. Both men were thrown into the air, one being thrown into the east-bound lane of traffic in front of or under the car of defendant, Dr. Lieberman, who at the time had slowed his vehicle. Both men were killed and the record is not clear as to which man was thrown into the path of Dr. Lieberman's car.

Louis Lieberman, a dentist by profession, one of the defendants called as an adverse witness under Section 60 [Ill. Rev. Stats. 1953, ch. 110, § 184], stated that he was driving his 1951 Oldsmobile in an easterly direction towards Chicago at about twenty-five to thirty miles per hour and as he approached Downers Grove Road, he thought he saw a man to the left of him out of the corner of his eye. He admitted testifying at the coroner's inquest that he said he must have been maybe two or three hundred feet from the intersection when this accident happened and it seemed to him that he saw a man in the center of the highway, a sort of tall man. To the best of his recollection, the man was standing seventy or eighty feet from the intersection and might have been moving a little bit; he was going about twenty miles per hour, or maybe a little less, at the time he hit the man. He stated that his car was in the same position in reference to the center of the road at the time he came in contact with the man as it was when he first saw him, and that he thought that the left front bumper came in contact with the man and that he believed his car passed over him.

The other defendant, Lichtsinn, was called as an adverse witness, and he testified that there were three individuals riding in the front seat of his car and two in the back; that as he approached Downers Grove Road he was traveling on the inside lane between fifty and fifty-five miles per hour and he was going about fifty to fifty-five miles per hour when he was fifty feet east of the intersection; he testified that the men were

ten or fifteen yards in front of him when he first saw them. He recalled testifying at the coroner's inquest, and he did answer ten or fifteen or twenty feet away. He further testified that when he first saw them they were to the left of his car, directly in front, to his left; they were just across the double line in the traffic of the opposite direction and that the impact occurred when he turned his wheels to the right. He testified that the traffic moving in the opposite direction was heavy; that it was dark out, and the cars going in the opposite direction had their lights on. He further testified that he was not good at estimating distances.

John Stokes testified for the plaintiffs that he was going west on Route 66 to his home in Peoria; that as he approached Downers Grove Road about three blocks away, a vehicle passed his car when he was going somewhere around sixty miles per hour; that this was the same car that was involved in the accident; that this car was being driven on the inside lane and there were no other vehicles in front of witness's vehicle on the inside lane and no cars in the visible distance ahead that were ahead of witness's car. He did not see the actual impact but saw the bodies after the accident. He heard the impact and saw the men being propelled by the force of the car and one of the men was propelled back toward him; that he pulled up and stopped, and the closest body to the intersection was about eighty or ninety feet away; the other body was about sixty feet farther away west.

Howard Pamplin, a State Patrolman, testified for defendants that he arrived at the scene of the accident about 6:35; that traffic on Route 66 was very heavy in both directions at that time; that when he arrived at the scene he found another State Police Squad there which had been standing by until he arrived. He saw the bodies of the two persons who had been killed lying

378

on the pavement. One of the bodies was lying approximately one hundred twenty-five feet west of Downers Grove Road and the other body approximately two hundred feet, they were about seventy-five feet apart; that he found a car of one of the men who was killed, Mr. Pozek, parked on the north side of Route 66, west of the intersection, about one hundred thirty to one hundred forty feet from Downers Grove Road.

Jack Carlstrom, a Sergeant, employed by the Illinois State Highway Police, testified for defendants that he had occasion to investigate the accident and that the condition of the traffic was very heavy, this being a Sunday evening. The bodies of the two men were separated by about fifty to seventy-five feet. He checked defendant Lichtsinn's car and the windshield on the left side was broken, and the headlight on the left side was broken off.

James F. Koback, testified for defendants that he was employed by the Winfield Construction Company and that in October 1953, he was a soldier in the United States Army, and that he was in a car with defendant Lichtsinn at the time of the accident; that he was in the back seat and that he was trying to catch a little nap and he did not actually see what happened before the accident took place. The first he had any notice or knowledge of the accident was when he felt the impact and the car swerved and came to a stop; that he saw the bodies of the two people that were killed before he got out of the car; that they were in back of them in the two opposite lanes going in the opposite direction south of the center line of Route 66; that there seemed to be sixty feet separating the bodies.

Robert Ladek testified for defendants that he was in the automobile being driven by defendant Lichtsinn and that the accident happened between 6:00 and 6:30; that he was in the front seat and that just before the

accident he was trying to get some sleep; that he had his head back on the seat and his eyes closed and he was just dozing off; that he first saw the glass fly from the windshield; that after he got out of the car, the traffic was heavy and all the cars had their lights on; that he saw both bodies in the street and they were about twenty-five to thirty feet apart and that the body closest to Downers Grove Road was seventy-five or one hundred feet and the other body was twenty-five or thirty feet west of that one. On cross-examination he testified that he did not see any of the occurrence; that he heard the glass crash and then the car swerved.

David Tierney testified for defendants that he was employed by the Rhode Island Railroad and that on October 11, 1953, he was in the army and was on his way back to Ft. Leonard Wood in the car being driven by defendant Lichtsinn. He testified that "As we approached Downers Grove Road we were going around 55 miles per hour. There were cars ahead of us but I don't know how close we were to them. There was traffic on the outer lane. One car ahead of us I would say was maybe five or ten yards ahead. There were cars coming from behind but I don't know how close. Traffic was heavy at the time. As we approached Downers Grove, we did pass some cars and they did pass us again." He further testified that he first saw the two men when they were west of the intersection probably about thirty or forty yards and at that time they were just the other side of the yellow line in the east-bound traffic about one foot and they were crossing together and they seemed to be trying to get across the road. "They weren't looking our way. They were looking the other way like they were getting ready to cross the road as soon as the traffic let up so they could get across and the next thing I knew they stepped back and were right in the headlights of our car. They stepped into our lane about one and a half feet and we hit the brakes

380

and swerved to the right and there was the impact. We swerved just a little bit to the right more or less. We went up the road maybe fifty yards west of Downers Grove Road. It was fifty yards when we pulled up and stopped off the road. The left windshield was smashed." The witness testified that he got out of the car and the men were in the opposite lane of traffic. One was about in the center of the east-bound lane and one was a little closer to the shoulder about ten yards apart. The one nearest Downers Grove Road was roughly twenty yards west of the intersection. The one closest to the intersection was just a little bit toward the shoulder, in the outer lane of the east-bound traffic. The other was about in the center of the east-bound lane. On cross-examination he testified that he first saw the two men when they were approximately thirty or forty feet west of Downers Grove Road. He testified that he recalled giving testimony at the coroner's inquest on October 12, 1953, and that his recollection of the facts of the accident were clearer in his mind the day after than they were on the day he was testifying at the trial; that he did say at the coroner's inquest, "We were going back to Ft. Leonard Wood on 66. We were on the outside lane nearest the yellow line, we just crossed the intersection, and I would say we were going about fifty miles per hour. All of a sudden these men were out in the center of the road, it was very dark, I mean it was dark with no lights around there, it appeared to me to be a dark corner, because it was hard to see. The first I seen of them, they were five or ten yards in front of the car standing right in the center line, maybe just to the left of the center line, in the next lane, it seems to me, all of a sudden they stepped back right in the path of our car. As they stepped back, he put on his brakes and swerved to the left. He got it with the left side. We stopped right away and jumped out of the car."

381

Robert H. Scudder testified for defendants that he lived at Downers Grove and was a mink rancher; that he witnessed the accident on October 11, 1953; that he was coming from his uncle's farm in Indiana, and was on the south side of 66, sitting at the crossing going north toward Downers Grove; that his wife and young son were with him and as he was standing there, he noticed that the traffic on Route 66 was very heavy; that he was there between five and ten minutes; that there was one car behind him as he was standing there; that the west-bound traffic was very heavy also; that the first thing that brought his attention to the accident was when he heard the screech of brakes to the left of him, that is west; he then saw a body up in the air, a little off center on the right hand side of the highway. The accident was with a car on the inner lane headed west. That he did not see the man that was hit before he was hit; that he first saw him when he was up in the air; that he came down in front of a car going east; that he saw the man in the air about seventy-five to one hundred feet west of the intersection to the left. On cross-examination he stated that after the impact Dr. Lieberman slowed down and came around him and parked in front; that he had his lights on; that the traffic going east was going between forty and fifty miles per hour; that the traffic going west was going at approximately the same speed.

 We have gone into considerable detail in reviewing the evidence of the occurrence witnesses, inasmuch as plaintiffs contend that the manifest weight of the evidence establishes the fact of the defendants' negligence and establishes the truth of the plaintiffs' version of the accident. The jury saw and heard the witnesses. Where disputed questions of fact are presented to a jury and the jury passes upon them, unless palpably erroneous, the finding of fact will not be disturbed by the reviewing court. People v. Hanisch, 361

Ill. 465; Griggas v. Clauson, 6 Ill.App.2d 412; Krug v. Armour & Co., 335 Ill. App. 222; Becherer v. Belleville-St. Louis Coach Co., 322 Ill. App. 37; Rembke v. Bieser, 289 Ill. App. 136; Leahy v. Morris, 289 Ill. App. 99. It is not the province of the court to substitute its judgment for the triers of fact, where there is a conflict in the evidence. Griggas v. Clauson, supra; Becherer v. Belleville-St. Louis Coach Co., supra; Martin v. Village of Patoka, 305 Ill. App. 51. It is the province of the jury alone, to determine the weight of evidence and the credibility of witnesses. Rembke v. Bieser, supra. To be against the "manifest weight of the evidence" requires that an opposite conclusion be clearly evident. Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267; Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, 147. We do not find that the verdict is manifestly against the weight of the testimony. Under these circumstances we have no right to set aside the jury's findings.

■ Plaintiffs object to defendant Lichtsinn's instruction No. 4 which is as follows:

"The rule requiring the plaintiffs to prove their case, by a preponderance or greater weight of the evidence, is a substantial rule of law binding upon the plaintiffs in this case, and you have no right, as jurors, to disregard such rule of law. It is your duty, as jurors, to enforce such rule of law in this case the same as each and every rule of law that the court gives to you in these instructions."

Our Supreme Court had occasion to pass on a similar instruction in the case of Chicago Union Traction Co. v. Mee, 218 Ill. 9. In that case the lower court refused to give on behalf of the appellant's instructions numbered 8 and 9, instruction No. 8 being as follows:

"The court instructs the jury that the burden of proof is not upon the defendants to show that they are not

guilty of the specific negligence charged in the declaration, or in some count thereof, but the burden is upon the plaintiff to prove that the defendants are guilty, and also to prove that he himself was in the exercise of ordinary care for his own safety, and this rule as to the burden of proof is binding in law, and must govern the jury in deciding this case. The jury have no right to disregard said rule or to adopt any other in lieu thereof, but in considering the evidence and coming to a verdict, the jury should adhere strictly to said rule."

The Supreme Court held that it was error for the court to refuse to give said instructions 8 and 9, and reversed the judgments of the Appellate and Superior Courts.

■ Plaintiffs object to defendant Lichtsinn's instruction No. 10, which reads as follows:

"You are instructed that the driver of an automobile is under no greater obligation to look out for and protect a pedestrian in a street at a place other than a crossing, than a pedestrian is under an obligation to look out for and protect himself. It is the duty of the pedestrian under such circumstances to keep on the lookout for automobiles approaching upon the proper and lawful side of the street and to exercise ordinary care to avoid any automobile or vehicle approaching."

The above instruction is specifically limited to a place other than a crossing and requires the pedestrian crossing at such a point to exercise ordinary care to avoid any automobile. Chapter 95½, Section 172, Ill. Rev. Stat., 1953, provides that every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. We see no error in the giving of this instruction.

■ Plaintiffs object to defendant Lichtsinn's instruction No. 11 which is as follows:

"If you find from a preponderance of the evidence that the defendant, Le Noel Lichtsinn, at and prior to the accident in question, acted as a reasonable and prudent person would have done and acted under the circumstances and did nothing and omitted nothing which a reasonable and prudent person would have done or omitted under like circumstances, then the defendant, Le Noel Lichtsinn, is not guilty of negligence and you should find the defendant, Le Noel Lichtsinn, not guilty."

In this connection plaintiffs' instructions with respect to the conduct of the plaintiffs' intestates should be noted. Plaintiffs' instruction No. 1 contains the language "at such time and immediately before"; No. 10, "at the time of and prior to"; No. 11, "at and before the time of the occurrence"; Nos. 12 and 22, "then and there and prior thereto"; and No. 21, "at and before the happening." Plaintiffs' said instruction No. 12 instructed the jury that if it believed from a preponderance of the evidence, under the instructions of the court, that the plaintiffs had proved that the defendant, Le Noel Lichtsinn, was guilty of negligence in one or more of the particulars as alleged in their complaint, and as defined in these instructions, and that such negligence, if any, proximately caused or proximately contributed to cause the injuries and deaths complained of in this cause, and that the decedents were then and there and prior thereto in the exercise of ordinary care for their own safety, then they should find the said Le Noel Lichtsinn guilty. Considering defendant Lichtsinn's instruction No. 11 with the instructions given on behalf of the plaintiffs, we cannot see how the rights of the plaintiffs were prejudiced in the giving of said instruction.

385

█ Plaintiffs object to the giving of defendant Lichtsinn's instruction No. 12 which is in the following words:

"If you believe from the evidence under the instructions of the court that the decedents, or either of them, by using his faculties with ordinary or reasonable care in looking out for danger could have avoided the accident on the occasion in question, and that said decedents, or either of them, negligently failed to do so and thereby proximately contributed to the accident, then the decedent so failing to exercise reasonable care cannot recover in this case on the charge of negligence against the defendant Lichtsinn."

Considering the facts as related in this opinion, we fail to see how this instruction prejudiced the rights of the plaintiffs in this case. The evidence showed that it was a Sunday evening in October; that it was dark; that cars had their lights on; that traffic was very heavy; and that despite these conditions, plaintiffs' intestates endeavored to cross an arterial highway at a point seventy to one hundred twenty-five feet west of the intersection with the Downers Grove Road. A circumstance tending to show that plaintiffs' intestates were not crossing at an intersection, is the fact that their car was parked a considerable distance west of the intersection. And further, considering the testimony of the witnesses as to where they stated plaintiffs' intestates were struck, there is no evidence in the record to substantiate plaintiffs' contentions that their intestates were crossing at a crosswalk. The above instruction was approved in Flynn v. Chicago City Ry. Co., 250 Ill. 460, 480, where the court held that the refusal to give same constituted reversible error.

█ Objection is made by plaintiffs to other instructions given on behalf of the defendants, and especially Lichtsinn's instruction No. 14, as follows:

"Respecting the claim against the defendant, Lichtsinn, based upon a charge of negligence, if you believe from the evidence that the plaintiffs, or either of them, and the defendant, Le Noel Lichtsinn, were guilty of negligence which proximately contributed to the injury or damage complained of, then you are instructed that you have no right to compare the negligence of the plaintiffs, or either of them, if any, with that of the defendant, Le Noel Lichtsinn, if any, and find a verdict according to which side you think was guilty of the greater degree of negligence, for in such case it is the law that it makes no difference which was guilty of the greater degree of negligence. Under such circumstances, the plaintiff, or plaintiffs, so guilty of negligence cannot recover."

Plaintiffs state that the record in this case clearly shows that the plaintiff, Anna Veselich, as administratrix of the estate of George Veselich, deceased, knew nothing about the accident until 8:30 p. m. on the evening of October 11, and that plaintiff, Anna Pozek, administratrix of the estate of John Pozek, deceased, was at home when the accident occurred; and that said plaintiffs under those circumstances could not be guilty of contributory negligence, and therefore it was error to give this instruction. It is well established that in ascertaining whether the jury were misled by an instruction, other instructions should be considered, McFarlane v. Chicago City Ry. Co., 288 Ill. 476, 483, 484; and that an instruction should be construed in the light of what an ordinary person would understand by it, Graham v. Dressen, 292 Ill. App. 15, 27; Kavanaugh v. Washburn, 320 Ill. App. 250. There can be no question that due to inadvertence, defendant Lichtsinn's said instruction No. 14 omitted the words, "intestates" after the word "plaintiffs" in this instruction. Under the facts in this case, however, the jury could not have

been misled by such inadvertence. This was the only instruction where such an omission occurred. The words, "plaintiffs' intestates" or "decedents" were properly included in plaintiffs' instructions Nos. 1, 10, 11, 12, 21 and 22, in defendant Lichtsinn's instructions Nos. 9a, 12 and 13, and in defendant Lieberman's instructions Nos. 3, 11 and 16. When the entire series of instructions is read, we cannot see how the jury was misled by this mistake. As was said in Moore v. Bethel, 4 Ill.App.2d 270, 278:

"Nor do we find grounds for new trial in any of the alleged erroneous instructions. The error, if any, is completely technical and not of such nature as would necessarily mislead the jury or assume the dignity of reversible error."

To try and treat each one of the other instructions separately would unduly lengthen this opinion. We think as a whole, taking all the instructions given, that the jury was properly instructed as to the law of the case.

■ Plaintiffs contend that the court erred in failing to admit in evidence the aerial photographs, Plaintiffs' Joint Exhibits Nos. 3, 4, 5 and 6, purporting to show the condition of the intersection as it existed in October of 1953. All of the parties cite and rely on the case of Department of Public Works & Buildings v. Chicago Title & Trust Co., 408 Ill. 41. Plaintiffs admit that the admission of the aerial photographs of the intersection is a matter within the trial court's discretion. It is to be noted in this connection that the trial court did admit into evidence seven ground level photographs of the intersection (Plaintiffs' Joint Exhibits 7–13), and three plats of the intersection (Plaintiffs' Joint Exhibits 14–16). The plat of the intersection, Plaintiffs' Joint Exhibit 14, performed the same function as the aerial photographs and the ground level photographs. Plaintiffs' Joint Exhibits 7 to 13,

inclusive, showed the jury the intersection as it appeared to each of the parties at the time of the accident. Thus, it is clear that there was ample documentary evidence in the record, plus the testimony of the various witnesses, to give the jury a proper perspective of where and how the accident took place. The trial judge was in a better position to judge the necessity of the aerial photographs as demonstrative evidence. We do not think that the trial court abused its discretion in refusing to admit the aerial photographs into evidence.

Finding no material error in the record, the judgment of the circuit court will be affirmed.

Judgment affirmed.

DOVE, P. J. and CROW, J., concur.