Lorraine Newton **DENGLER** and Charles
N. Dengler, Plaintiffs-Appellants,
v.
**CHICAGO AND NORTH WESTERN
RAILWAY SYSTEM,** a corpora-
tion, Defendant-Appellee.
No. 12676.

United States Court of Appeals
Seventh Circuit.
Feb. 4, 1960.

George Yellen, Chicago, Ill., for appel-
lants.

John H. Gobel, Atty., C. & N. W. Ry.
Co., Edward Warden, Chicago, Ill., for
appellee.

Before DUFFY and KNOCH, Circuit
Judges, and SWYGERT, District Judge.

KNOCH, Circuit Judge.

Plaintiffs brought action in the Supe-
rior Court of Cook County, Illinois, to
recover $125,000 damages from the de-
fendant Railway System consequent on
allegedly negligent acts of defendant re-
sulting in a collision, at about 1:00 a. m.,

June 26, 1956, between defendant's train and Mr. Dengler's automobile, in which Mrs. Dengler (then Mrs. Newton) was the driver and Mr. Dengler a passenger. Plaintiffs were then on their way to Crown Point, Indiana, to get married,— a joint venture.

The cause was removed to the District Court by defendant, and tried to a jury, which brought in verdicts finding defendant "not guilty" as to both plaintiffs, on which the District Court entered judgments from which plaintiffs appeal.

Plaintiffs list the contested issues as:

1. That the verdict rendered was manifestly against the weight of the evidence.

2. Whether the defendant in the operation of its train violated Chapt. 114, Sec. 59, Ill.Rev.Statutes.[1]

3. Whether the train in question, in backing across the highway, did so without exhibiting proper lights and warning.

4. Whether the jury were improperly instructed.

Plaintiffs argue that the evidence shows that their automobile was proceeding southeasterly along Rand Road, in Cook County, Illinois, (a State highway running in a northwest and southeast direction) at 45 miles per hour, when, without warning or signal, a dark object loomed up, and the caboose at the rear end of an unlighted six- or eight-car freight train backed into their automobile, although Mrs. Dengler immediately applied her brakes and swung to the left, skidding 40 to 50 feet. In addition to the above facts, both plaintiffs testified that they knew the railroad crossing was there, having crossed same a number of times before the accident. The headlights on the automobile shone about 250 to 270 feet ahead and the automobile could have been stopped in 110 to 155 feet.

Defendant's witnesses testified that just prior to the accident, defendant's switch train, comprising an engine, two cars and a way car, caboose, backed off its main line (just south of Rand Road) along its single switch line which crosses the four lanes of Rand Road. When the caboose reached a point about 10 feet south of the southwesternmost paved portion of Rand Road, the conductor signalled a stop. After the train had stopped, a brakeman, Harry Opalka, then placed himself about 40 to 50 feet northwest of the track, in the center of the two southeastbound lanes of Rand Road to flag oncoming traffic. A second brakeman, Billy Thacker, took a similar position on the other side of the switch track in the center of the northwestbound lanes. Both men had lighted flares, visible from about a mile away, and lighted lanterns. The caboose had six-inch marker lights visible from the rear and sides. The engine bell was ringing. A third brakeman, Harold Grisham, was on the platform or just inside the door of the caboose. Then the movement started. This operation was carried out about four times weekly at about the same time of day.

Brakeman Opalka on the southeastbound lanes testified that he saw the plaintiffs' automobile approaching from the northwest, that he waved his flare, called out, and finally had to run and jump to get out of the way of the oncoming automobile. The engineer testified that he saw the automobile approach from about 800 to 1000 feet away and applied the train brakes when he saw that the automobile was not going to stop. The conductor testified that he saw the automobile coming from about ¼ mile northwest, called out, and jumped off the caboose. The train was then moving at about three to four miles per hour. The defendant's witnesses varied in their estimates of the automobile's

1. "Every railroad corporation shall cause a bell of at least thirty pounds weight, and a steam whistle placed and kept on each locomotive engine, and shall cause the same to be run or whistled by the engineer or fireman, at the distance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and shall be kept ringing or whistling until such highway is reached." Ill.Rev.Stat.1955.

rate of speed from 35 to 60 miles per hour. They said that the train stopped with the edge of the caboose just over the center lane of Rand Road in the passing lane for northwestbound traffic. The automobile then was braked, swerved to the left, and hit the caboose. There were skid marks of about 40 feet in length. The caboose, weighing about 20 tons, was derailed, due to the impact.

Plaintiffs contend that the jury disregarded the evidence of the sole disinterested witness, the Deputy Sheriff, who was not an eye witness, but who came to the scene immediately after the accident to make a report on it. He testified that he passed the site of the accident two or three times per night and that he could not recall ever seeing a train cross there before. He testified further that he overheard the conductor tell bystanders that the brakeman was riding the back platform of the caboose where he would have been struck by the automobile had the conductor not called out to him to jump off. Cross-examination brought out the fact that the Deputy Sheriff had not included this statement in his written report and that he could not identify the clothing or describe the appearance of the conductor who had spoken.

Plaintiffs contend that the Deputy Sheriff's evidence shows that defendant's witness, Opalka, one of the brakemen, who testified that he had been out on the road signalling, was, in fact, on the train at the time. However, the evidence disclosed that the train had three brakemen at the time of the accident, and the statement imputed to the conductor by the Deputy Sheriff, if accepted by the jury, creates no inconsistency with the testimony of defendant's witness, brakeman Opalka.

■ Plaintiffs deal separately with the issues of whether or not defendant's train was operating in compliance with Illinois statutes regarding bells, whistles, and lights. Plaintiffs argue that the evidence of the train crew on these points was inadequate. The crew members did testify to the existence and use of bells, lights, etc. Plaintiffs testified to the absence of these, and state that there was no proof that the bell was rung from a distance of at least 80 rods of the scene of the accident. They further contend that the lights described by the crew members were inadequate. They argue that when a train is backing it should carry a headlight similar to that located on the engine. We know of no statute which requires headlights on a caboose when the train is backing. Obviously the statute heretofore quoted could not be applicable when a train backs up to the crossing and comes to a complete stop, before sending out brakemen with proper warning signals. This at least presents a jury question.

■ The jury were thus presented with conflicting evidence on questions of fact. There was, however, ample evidence to support the verdicts reached. It is axiomatic that, under these circumstances, this Court will not itself weigh the evidence and make its own determination of the facts. Greinke v. Yellow Cab Co., 7 Cir., 1958, 250 F.2d 865, 866; Gearhardt v. American Reinforced Paper Co., 7 Cir., 1957, 244 F.2d 920, 922; Roller v. Kurtz, 1955, 6 Ill.2d 618, 626, 129 N.E.2d 693.

■ In considering plaintiffs' contentions regarding the instructions to the jury, we must read the instructions as a whole. Affleck v. Chicago & North Western Railway Co., 7 Cir., 1958, 253 F.2d 249, 251, 68 A.L.R.2d 982; Atkinson v. New Britain Mach. Co., 7 Cir., 1946, 154 F.2d 895, 899.

■ Plaintiffs complain of Instruction 52 which reads:

"You are instructed that if you find from the evidence and under the instructions of the court that both a plaintiff and defendant were guilty of negligence and that the negligence, if any, of both proximately contributed to cause the injury to said plaintiff, then you must not compare the negligence of said plaintiff with that of defendant, for in such case the law is that it makes

no difference which was guilty of the greater negligence, and in such case you should find defendant not guilty."

They argue that this instruction improperly indicated to the jury that defendant was bound to exercise no higher degree of care than plaintiffs. It appears to us, on the contrary, that the jury was being properly instructed in the law of Illinois with respect to the doctrine of comparative negligence. Veselich v. Lichtsinn, 1956, 11 Ill.App.2d 372, 387, 135 N.E.2d 823, 57 A.L.R.2d 1339; Cicero & P. St. Ry. Co. v. Meixner, 1895, 160 Ill. 320, 328, 43 N.E. 823, 31 L.R.A. 331.

■ Plaintiffs also aver that contributory negligence was overly stressed, and that there were too many instructions ending in a direction to find the defendant not guilty. Careful reading of the instructions as a whole does not lead to that conclusion. Plaintiffs contend that an instruction referring to plaintiffs' interest in the outcome of the case improperly singled out plaintiffs as witnesses with an interest in the case. The defendant was entitled to an instruction advising the jury that plaintiffs' interest was one factor which the jury might take into consideration. Chicago & E. I. R. Co. v. Burridge, 1904, 211 Ill. 9, 14, 71 N.E. 838. In the Burridge case the Court said that objection to singling out plaintiff would have been valid had the suit been brought against a natural person, but not where defendant was a corporation and the witnesses were its servants; that plaintiff's direct interest in the outcome of the trial was different from that of defendant's servants. It does not appear, in the case before us, that plaintiffs tendered any instructions regarding possible interest of the other witnesses who had testified in the trial.

With respect to the four instructions tendered by plaintiffs, refusal of which is assigned as error, it appears to us that the substance of these instructions was clearly included in other instructions which were given to the jury. As the jury arrived at a verdict for the defendant in this matter, we do not reach the objections to instructions devoted solely to determination and computation of damages.

As we have discerned no error, the judgment below is

Affirmed.