William Piper and Ivan W. Rightnowar, Plaintiffs-Appellants, v. Leonard Lamb and Clarence Hampton, Defendants-Appellees.

**Gen. No. 10,286.**

Third District.

September 22, 1960.

O'Connell and Waller, of East St. Louis (John F. O'Connell, of counsel) for appellants.

Craig and Craig, of Mattoon, and Baker and Baker, of Shelbyville (Jack H. Anderson and John J. Baker, of counsel) for appellees.

REYNOLDS, J.

This is a suit for personal injuries growing out of a collision between the automobile driven by Ivan W. Rightnowar, in which William Piper was riding as a passenger, and a truck driven by Clarence Hampton, an employee of Leonard Lamb. The collision occurred when the driver of the truck turned to the left to enter a private road or lane. Both vehicles were traveling south on Illinois Highway No. 128, which is a standard two-lane concrete highway. The highway runs north and south and for some distance each way from the point of intersection of the lane, it is straight and level. There are no highway signs of any character. Piper was riding in the front seat with Rightnowar driving. Just before the collision, the truck was in front, behind it some seven to ten car lengths was a Ford automobile being driven by Reatha Prater, and behind it and overtaking both the truck and the Ford automobile was the Buick automobile being driven by Rightnowar. Rightnowar was driving at least 60 to 65 miles per hour, and started to pass both the Ford and the truck. He got by the Ford and at that time the truck started to turn to the left to enter the lane. The Buick and the truck collided, with the Buick continuing on until it hit a tree some half block further south. Both Piper and Rightnowar were injured by the collision and brought suit for damages against the driver of the truck and his employer. The jury returned a verdict finding the defendants not guilty, and a guilty verdict as to the counterclaim of Leonard Lamb against counterdefendant Rightnowar and assessed Lamb's damages at $557.68. Judgment was entered on the verdicts. Both Rightnowar and Piper filed notice of appeal, but the judgment on the counterclaim having been settled, Rightnowar has abandoned his appeal and the appeal is only by Piper.

William Piper testified he was riding in the Buick automobile driven by Rightnowar. They were traveling at a speed of 60–65 miles per hour as they approached the point of collision. There was a hill about a mile north of the point of collision and Piper first saw the truck as the Rightnowar car reached the top of this hill. From the top of the hill to the point of collision is about a mile. The slope downward is gradual and then the road levels off. There was very little shoulder on the road. From the hill he could see two or three miles southward and the road was straight and visibility unimpaired. He first saw the Ford about a quarter of a mile before it reached the crest of the hill. He estimated the speed of the Ford at 50 miles per hour. The Ford was in sight a quarter of a mile before it reached the crest of the hill and approximately one half mile to the scene of the collision. He did not notice any change in the speed of the Ford until they were passing it, and at that time he estimated the speed of the Ford at 40 miles per hour. He saw the brake-lights on the Ford light up as they were passing it, and the Ford was then about 75 to 100 yards from the point of collision. He estimated the distance then between the Ford and the truck at one hundred fifty feet. As they started to pass the truck, it turned in front of them. They were two or three car lengths behind the truck when he realized it was going to make a turn to the left. He estimated the speed of the truck at the turn to be 10 to 15 miles per hour. Rightnowar swerved to the left, on to the shoulder with part of his car, and when Piper regained consciousness after the collision, the Rightnowar car was against an elm tree down the road.

Ivan Rightnowar, driver of the Buick automobile, testified he saw the truck and the Ford when he came down the hill. He estimated his speed at 60 to 65

103

miles per hour. He estimated the speed of the Ford
at 45 miles per hour and said it was about half way
between his car and the truck. The Ford was over-
taking the truck and he was overtaking both vehicles,
the Ford and the truck. When he first saw the Ford
it was an eighth of a mile behind the truck. When he
got about five or six car lengths behind the Ford, he
sounded his horn to pass, and at that time the dis-
tance between the truck and the Ford was about five
or six car lengths. He was passing the Ford when he
saw the truck was going to turn. He swerved his car
to the left and had both left wheels off the pavement
when the collision occurred. He saw no tail lights or
signal lights on the truck as he was passing the Ford.
He intended to pass both vehicles as he swung out to
pass. There was a left hand shoulder on the road.
When he regained consciousness he was in the car
against a tree.

Clarence Hampton, driver of the truck was driving
the truck for Leonard Lamb and was taking the truck
from Shelbyville to the farm of Cecil Venter to use it
in a corn shelling operation. He picked up the truck
at the filling station where it had been left for him,
and with Robert Morris, a mentally defective boy who
was also working for Leonard Lamb, drove toward
the Venter farm. The truck was a grain truck, with
a grain-tight body, and stood some seven feet high and
was approximately seven feet wide as to the body of
the truck with a cab of some five and one half feet
wide. The truck was about twenty feet long and was
equipped with driving lights and stop lights and turn
indicator lights. There was a rear vision mirror on
the cab that projected beyond the truck body so that
the driver could see to the rear. He checked the rear
vision mirror before he left the filling station and it
was what he called O.K. The truck had been filled
with gas and oil and he made no inspection except to

check to see that he could see behind him with the rear vision mirror. When he came over the crest of the hill about a mile north of the Venter lane, the weather was clear, the pavement was dry and visibility to the south was good. There were no highway signs along the road. There were some small trees growing by the highway, but none within a quarter of a mile of the Venter lane. He was traveling about 45 miles per hour as he went over the hill. As he came to the point to get ready to make the turn, he glanced in the mirror. This was at a point about 200 yards from the lane. He saw the Ford behind him but did not see the Buick of Rightnowar. At about 150 to 200 yards from the turn, he testified he turned on his flashing lights, to indicate a turn. He did not give a hand signal for the turn and said the windows were closed and it was near freezing weather. He did not see the Rightnowar car until it hit him. He was traveling five to ten miles per hour when hit, and the front end of the truck was just at the eastern edge of the pavement. The car after striking the truck, proceeded down the road approximately 200 feet and hit a tree. The truck was knocked around to the other side of the pavement.

Leonard Lamb, the owner of the truck testified that he had had it filled with gas, and the oil and water checked. He arrived at the filling station about 5:30 a. m. He also checked the lights and brakes. He testified the truck brakes were in good shape and the truck itself had been tested. He turned on the turn indicators, and walked around the truck to see they were operating and they were operating properly. The truck was equipped with a set of turn lights, one on each front fender and one on each corner of the truck bed, together with a cluster of three lights on the rear of the cab and two tail lights. When he arrived at the scene of the collision he found his truck had been knocked to the west side of the highway,

105

■■■■■■

headed southwest. He saw the Buick automobile of Rightnowar against an elm tree some 20 feet east of the highway slab and approximately 200 feet south of the Venter lane. The Venter lane is level with the slab and at the east edge of the highway was some 24 to 30 feet wide.

Glen W. Wade, Sheriff of Shelby County, went to the scene of the collision. He found the Buick car of Rightnowar against a tree 189 feet south of the Venter lane and approximately 25 feet off the paved portion of the highway. The truck was partially off the road on the west side of the highway, with the rear wheels on the highway and the front off the highway on the west side.

Reatha Prater, the driver of the Ford testified for the defendants. She stated she was a bookkeeper and teller in a bank at Cowden, Illinois. She did not know the defendants. She had been in Shelbyville to see a dentist, had stayed the night with a cousin, and after an early appointment with the dentist had started home. She was alone, the weather was clear, no ice, and the pavement was clear and visibility was good. She was driving about 50 miles per hour and as she topped the hill to the north of the accident scene, she saw the truck, about a quarter of a mile ahead. When she was about halfway between a lane that goes to the west and the Venter lane, she saw the truck start to slow and she slowed her car. The truck pulled into the center of the road to turn. As she slowed down she glanced in her rear vision mirror and saw no car back of her. She was about 150 feet to the rear of the truck when the car passed her, and had applied her brakes two or three times, a few seconds apart, as she slowed her car. When the brakes on her car are applied, the tail lights flash red. The electrical system was in good shape. She did not hear any horn. She estimated the speed of the car passing her at 80 miles per hour. She

did not recall whether the signal lights on the truck were on or off, but she did know that the truck was going to turn. The truck was already headed east when the car passed her, and the front of the truck was at the east edge of the pavement. She judged the speed of the car by the distance it traveled after the collision, which she estimated at a half block, and the way the truck was turned around.

The plaintiff Piper's theory on appeal is that as a matter of law the evidence showed the defendants were guilty of negligence and that as a passenger, as a matter of law, he, himself, was not guilty of negligence, and that the trial court should have granted a new trial. Plaintiff Piper further contends that the verdict of the jury is against the manifest weight of the evidence.

■■■■ As to the first contention, namely that the evidence showed that the defendants were guilty of negligence as a matter of law, the plaintiff cites a number of cases in support of this contention, but we fail to find any authority in any of them that supports his theory. Most of the cases cited relate to the question of motions for a directed verdict or for a new trial but in most of them the court holds that where a question of fact is presented by the evidence, the matter is one for a jury to decide. In this case the evidence was conflicting. In such a state of the evidence, it is the duty of a jury to determine the facts. Oran v. Kraft-Phenix Cheese Corp., 324 Ill. App. 463, 58 N.E.2d 731; Ritter v. Nieman, 329 Ill. App. 163, 67 N.E.2d 417. In the case of Carter v. Geeseman, 303 Ill. App. 280, 25 N.E.2d 120, it was said that unless it can be said that the action of a person is clearly and palpably negligent, it is not within the province of the court to substitute its judgment for that of the jury. Citing Blumb v. Getz, 366 Ill. 273, 8 N.E.2d 620. In the case of Hering v. Hilton, 12 Ill.2d 559, 147 N.E.2d

311, cited by the plaintiff, the court, after defining wilful and wanton misconduct, did not say the defendant in that case was guilty of wilful and wanton misconduct as a matter of law, but reversed and remanded the case so that it could be submitted to a jury on the question of the wilful and wanton count. The case of Greenwald v. Baltimore & O. R. Co., 332 Ill. 627, 164 N. E. 142, involved the propriety of the giving of an instruction directing a verdict for the defendant. In that case there was an absolute lack of due care on the part of the plaintiff. That is not the case here. Under Illinois law, issue of negligence is a factual one to be determined by the trier of fact, and becomes a question of law only if it can be said that all reasonable minds would reach the conclusion, under evidence, that such evidence does not establish due care on part of person charged therewith. Gomez v. United States of America, 246 F.2d 878. The question of negligence does not become a "question of law" unless the evidence is such that all reasonable minds would agree that defendant was not negligent in his acts or that the injury was the result of the plaintiff's own negligence. Kaznowski v. City of LaSalle, 316 Ill. App. 115, 43 N.E.2d 852. The general rule is that negligence and contributory negligence are questions of fact for the jury, and so long as a question remains whether either party had performed his legal duty or has observed that degree of care imposed upon him by the law, and determination of question involves weighing and consideration of the evidence, the question must be submitted as one of fact. Peterson v. Hendrickson, 335 Ill. App. 223, 81 N.E.2d 266. Even where the facts are admitted or undisputed but where a difference of opinion as to the inference that may legitimately be drawn from them exists, the questions of negligence and contributory negligence ought to be

submitted to the jury—it is primarily for the jury to draw the inference. Denny v. Goldblatt Bros., Inc., 298 Ill. App. 325, 18 N.E.2d 555; Cloudman v. Beffa, 7 Ill.App.2d 276, 129 N.E.2d 286; Pantlen v. Gottschalk, 21 Ill.App.2d 163, 157 N.E.2d 548. In the case of Cloudman v. Beffa, 7 Ill.App.2d 276, at page 284, the court said that as long as a question remains whether either party had observed that degree of care and caution imposed upon him by law, and the determination of the question involves the weighing and consideration of the evidence, the question must be submitted as one of fact.

■ In the light of the authority of the above cited cases, this court cannot say as a matter of law that the defendants were negligent. There is evidence that the defendant Clarence Hampton had signalled for a turn by using his turn indicators. There is evidence by a disinterested witness Reatha Prater, driving immediately behind the truck driven by Hampton, that the truck pulled to the center of the road to turn. This witness, who was closest to the truck, slowed her car to allow the truck to turn. This character of evidence is such that this court would not be justified in determining as a matter of law that the defendants were negligent. Questions of fact are presented that must be presented to the jury.

■ The plaintiff cites subsections (a) and (b) of Section 162, Chapter 95½, Illinois Revised Statutes, which govern the turning of a vehicle from a direct course upon a highway. Both subsections provide that a signal of the intention to turn shall be given. Defendant Hampton testified he gave such a signal. But if he gave no signal, it has been held that violation of the Motor Vehicle Act does not constitute "negligence per se." Burke v. Zwick, 299 Ill. App. 558, 20 N.E.2d 912; Sumner v. Griswold, 338 Ill. App. 190, 86 N.E.2d 844.

The contention of the plaintiff that the defendants were guilty of negligence as a matter of law must be rejected.

■ The next point raised by plaintiff is that the contributory negligence of the driver could not be imputed to him as a passenger. Before considering this point, it will be of benefit to refer to the testimony. Plaintiff Piper testified he saw the tail lights of the car driven by Mrs. Prater go on as they were passing her car. Obviously, he could not have seen those tail lights if they were passing but had to see them while the car in which he was riding was behind the Prater car. There is nothing in the testimony to show that he said anything to the driver Rightnowar or in any way warned him of danger ahead. The circumstances of the case of Carter v. Geeseman, 303 Ill. App. 280, 25 N.E.2d 120, are very similar to this case. In that case Geeseman had testified that he had signalled with his arm his intention to turn from a point some 300 to 500 feet west of the driveway into which he was turning and that he slowed down to make the turn. The trial court granted a new trial on the ground that the statute required that no person shall turn a vehicle from a direct course unless, and until, such movement can be made with reasonable safety. This section of the statute is subsection (a) of Section 162 of Chapter 95½, Illinois Revised Statutes. The trial court also predicated his granting a new trial on the ground that because of the suddenness of the turn by Geeseman, it could not be said that the passengers were negligent in failing to caution the driver that she was driving the truck into a dangerous position. The court in that case stated that considering the close question of whether or not the defendant Geeseman could make the left turn with reasonable safety, the court would not feel justified in setting aside the order of the trial court granting a new trial. And in refusing to set

aside the order of the trial court, the court said that the court must bear in mind that there are many things which a trial judge observes on a trial that does not appear from the printed record—the appearance of a witness, his or her manner of testifying, and other circumstances that greatly aid the trial court in determining the credibility of a witness and the weight, if any, that should be attached to his or her testimony. In this case the trial court refused to grant a new trial, and the same rule announced in the Carter v. Geeseman case, would apply here. Here the evidence was conflicting, and the trial court was in a much better position to determine the value and weight of the testimony. His refusal to grant a new trial should not be disturbed unless clearly erroneous.

 In the case of Fisher v. Johnson, 238 Ill. App. 25, cited by plaintiff, the passenger suffered retrograde amnesia from his injuries and could not remember what happened. In this case, the plaintiff passenger, Piper, saw the tail lights of a car following the truck and did nothing to inform the driver of danger. This constituted a question of fact for the jury to consider and we do not regard the Fisher v. Johnson case as analogous in this case.

In the case of Grifenhan v. Chicago Rys. Co., 299 Ill. 590, 132 N. E. 790, the court held that when a passenger in an automobile has an opportunity to learn of danger and avoid it, it is his duty to warn the driver of the automobile of such danger. The passenger has no right, because someone else is driving the automobile, to omit reasonable and prudent efforts on his part to avoid danger. Here, although the passenger saw the tail lights of the Prater car come on, the evidence is devoid of any proof that he made any attempt to warn the driver of any impending danger. The passenger must use reasonable precautions for his own safety, and whether he did use

111

such reasonable precautions, in the light of evidence of facts that might have apprised him of danger is at least a question of fact for the jury.

The next point urged by the plaintiff is that the verdict of the jury was against the manifest weight of the evidence. There can be no dispute with the proposition that this court has a duty to reverse where the verdict is against the manifest weight of the evidence. The difficulty lies in determining where the weight lies, and whether a verdict is against the manifest weight. It must be conceded here that the evidence is conflicting: That raises a question of fact for a jury to decide. Before a reviewing court can say that the verdict of a jury is against the manifest weight of the evidence, it must be clearly, plainly, and indisputably against the weight of the evidence. An opposite conclusion must be clearly evident. Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267, 117 N.E.2d 565; Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, 72 N.E.2d 705; Veselich v. Lichtsinn, 11 Ill.App.2d 372, 135 N.E.2d 823; Niman v. Pecatonica Livestock Exchange, 13 Ill.App.2d 144, 141 N.E.2d 327; Goertz v. Chicago & N. W. Ry. Co., 19 Ill.App.2d 261, 153 N.E.2d 486. As said in the Schneiderman v. Interstate Transit Lines, Inc. case, "Manifest means clearly evident, clear, plain, indisputable." With the facts in dispute it is the province of the jury alone to determine the weight of the evidence and the credibility of witnesses. Veselich v. Lichtsinn, 11 Ill.App.2d 372, 135 N.E.2d 823. It is not the province of the reviewing court to substitute its judgment for that of the jury. Niman v. Pecatonica Livestock Exchange, 13 Ill.App.2d 144, 141 N.E.2d 327. We do not find that the verdict is manifestly against the weight of the evidence, and under such circumstances we have no right to set aside the jury's findings.

██ ██ It is contended that a motorist does not fulfill his duty under the law by merely indicating a signal for a left turn, but has a further duty of not making the turn until it is reasonably safe to do so. This court agrees with that contention. However, the actions of the driver of the truck in this case, slowing down, braking, and signalling for a turn, all present the question whether it was reasonably safe to turn, and this question is one for a jury. Tabor v. Tazewell Service Co., 18 Ill.App.2d 593, 153 N.E.2d 98.

We cannot say as a matter of law that the defendants were negligent. Neither can we say that the verdict is clearly, plainly and indisputably against the weight of the evidence. As to the passenger question raised by the plaintiff Piper, we believe his evidence that he saw the lights on the Ford car go on and his failure to do or say anything about it, raised a question of fact as to whether he did use ordinary precautions for his own safety, which is a jury question. For the reasons stated, the judgment is affirmed.

Judgment affirmed.

CARROLL, P. J., and ROETH, J., concur.